IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN KUBISCHTA, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br>v. )<br>SCHLUMBERGER TECH CORP, )<br>Defendant. ) | Civil Action No. 15-1338<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

I. Introduction

This wage and hour case arises out of the former oil and gas activities of Defendant Schlumberger Tech Corp. ("Defendant") in Washington County, Pennsylvania and parts of Ohio. (Docket Nos. 25 at 6; 59 at ¶¶ 1, 8). The dispute before the Court involves the enforceability of certain provisions contained in a severance agreement (the "Agreement") between Plaintiff Jonathan Kubischta ("Plaintiff") and Defendant which included, among other things, a class action waiver clause and a corresponding release of a lengthy list of potential causes of action. (Docket No. 55-1). The Court issued a series of show cause orders directing the parties to brief issues related to the import of the Agreement, (Docket Nos. 41, 58, 71), to which all parties have responded. (Docket Nos. 43, 45, 54, 55, 65, 66, 79, 80). Counsel for the parties also provided oral argument at the Hearing held before this Court on March 22, 2016. (Docket No. 46). After careful consideration of all of the parties' submissions and for reasons that will follow, the Court finds that the class action waiver clause of the Agreement is enforceable. The Court will therefore enter summary judgment in favor of Defendant and against Plaintiff as to the class action wage and hour claims that he has asserted as class representative. However, the Court's

1

Order is without prejudice to Plaintiff submitting a Second Amended Complaint setting forth his individual wage and hour claims against Defendant. The Court expressly declines to rule on the enforceability of the release provision in the Agreement at this time.

## II. Background

Plaintiff brings this action against his former employer, Defendant, to recover unpaid overtime wages and other damages, individually and on behalf of other Measurement While Drilling employees ("MWD Class Members"), alleging violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101 *et seq*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (collectively, "the Ohio Acts"). (Docket No. 59). Plaintiff also asserts an individual claim against Defendant to recover for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Id.* Neither Plaintiff nor the Defendant is a citizen of Pennsylvania, as Plaintiff is a resident of Cleveland, Cuyahoga County, Ohio, and Defendant maintains its headquarters in Texas. (*Id.* at ¶ 3). Plaintiff brought this action in the Western District of Pennsylvania because he allegedly worked substantial overtime for Defendant in Washington, Pennsylvania. (Docket No. 59 at ¶ 7). Plaintiff also allegedly worked for Defendant, at times, in Ohio. (Docket No. 25 at 6).

According to the First Amended Complaint, Plaintiff worked as a Measurement While Drilling ("MWD") employee for Defendant. (Docket No. 59 at ¶ 17). Plaintiff alleges that, although he and the MWD Class Members were regularly scheduled to work eighty-four (84) hours per work week, Defendant did not pay any members of the MWD Class overtime for any hours worked in excess of forty (40) hours in a work week. (*Id.* at ¶¶ 25, 26). Instead, Defendant paid its MWD employees a base salary plus a day-rate. *Id*. Plaintiff contends that,

because the MWD work involves manual labor duties that constitute *non*-exempt work, Defendant owes back overtime wages to Plaintiff and the MWD Class Members. (*Id.* at ¶ 27).

Plaintiff's employment with Defendant ended on or about September 25, 2015. (Docket No. 55-1 at ¶ 1). As consideration for participating in the Schlumberger Technology Corporation Severance Plan (the "STCPS"), Plaintiff was required to execute the Agreement. (*Id.* at ¶ 2). In return, Defendant was to: pay Plaintiff $924.00; pay Plaintiff an amount representing his applicable monthly COBRA premium payment for a period of three (3) months; and provide Plaintiff with outplacement counseling for three (3) months. *Id.* The Agreement contains a class action waiver, which provides that "[Plaintiff] waives participation, to the extent permitted by law, in any class or collective action, as either a class or collective action representative or participant as to those claims not released, by signing this Agreement prior to the conditional certification of a class or collective action." (*Id.* at ¶ 5). The Agreement also includes a choice of law provision stating that the Agreement "shall be governed and conformed in accordance with the laws of the State of Texas…" (*Id.* at ¶ 9). Plaintiff was presented with the Agreement on September 25, 2015, and was informed that he had until November 9, 2015 to consider and execute the Agreement. (*Id.* at 11). Following Plaintiff's receipt of the Agreement, but before he signed and agreed to it, "[Plaintiff] contacted [his current] attorneys to inquire about potential wage claims he may have against [Defendant.]" (Docket No. 25 at 7). After consulting with his counsel, on October 5, 2015, Plaintiff executed the Agreement and returned the signed copy to Defendant. (Docket No. 55-1 at 8). Defendant purports to have fulfilled all of its obligations under the Agreement, (Docket No. 45 at 2), which Plaintiff has not refuted.

Nevertheless, with the assistance of essentially the same counsel, Plaintiff proceeded to file this class action lawsuit on October 14, 2015, asserting claims under the PMWA and the

Ohio Acts in his own right and on behalf of MWD Class Members. (Docket No. 1). The next day, Plaintiff filed a consent to opt-in to an FLSA collective action in *Boudreaux v. Schlumberger Tech Corp.*, Case No. 6:14-cv-02267, which is still pending in the U.S. District Court for the Western District of Louisiana. (Docket No. 18-4). He then sought leave to withdraw his opt-in from that lawsuit one day later, which was eventually granted by the District Court in Louisiana over the objections of Defendant. (*See* Docket No. 30). In light of this ruling, Defendant withdrew its previously filed motion to dismiss, (Docket No. 18), in this Court and then filed its Answer to Plaintiff's initial Complaint on February 22, 2016. (Docket No. 32).

The Court scheduled a case management conference for March 22, 2016. In advance of the conference, on March 18, 2016, this Court ordered the parties to show good cause as to why this case should not be dismissed due to the Agreement, which indicates that the Plaintiff had settled his state law claims as of October 5, 2015.[1] (Docket No. 41). Plaintiff filed his response to the Show Cause Order on March 21, 2016, (Docket No. 43), to which Defendant responded on March 22, 2016 by filing a brief in opposition. (Docket No. 45).

The Court held a case management conference/oral argument on March 22, 2016. (Docket No. 46). At Hearing and Oral Argument, this Court notified the parties that the above-discussed issues may be dispositive to the case, and that Mr. Kubischta may have released or waived many of his claims by entering into the Agreement. Subsequently, and with leave of Court, both parties filed supplemental briefs on April 8, 2016. (Docket Nos. 54, 55). Then, on April 11, 2016, this Court ordered the Plaintiff to respond to Defendant's Supplemental Memorandum at Section C entitled, "Under the *Erie* Doctrine, Kubischta's Right to Proceed with

---

[1] The Agreement, under "General Release of Claims," explicitly disclaims waiver of any claims under the FLSA that Plaintiff may have. (Docket No. 55-1 at ¶ 5).

a Class Action Is a Procedural Right, and Not a Substantive Right, And, As a result, Can Be Waived." (Docket Nos. 54, 58). Plaintiff, on that same date, filed his First Amended Class Action Complaint, (Docket No. 59), in which he inserted an individual claim under the FLSA.[2] Defendant answered Plaintiff's Amended Complaint on April 25, 2016. (Docket No. 70). On the following day, this Court ordered the parties to submit supplemental briefing on the Agreement under Texas law, (Docket No. 71), which was submitted on May 17, 2016 (Docket Nos. 79, 80). The matter is now ripe for disposition.

### III. Legal Standard

Heeding the directives in Rule 1 of the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination of every action and proceeding," this Court will address the enforceability of the class action waiver at this time, in accordance with Rule 56. To this end, Federal Rule of Civil Procedure 56(f)(1) provides that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant." The Third Circuit has held that, "[u]nder our cases, a district court may not grant summary judgment *sua sponte* unless the court gives notice and an opportunity to oppose summary judgment." *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (quoting *Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903 (3d Cir. 1994)). In the context of *sua sponte* summary judgment, the First Circuit has defined "notice" to mean "that the targeted party 'had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward.'" (*Id.* at 223-24) (quoting *Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1st Cir. 1999) (internal citations omitted)).

---

[2] Although the original Complaint states that "[t]his Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA," (Docket No. 1 at ¶ 3), it did not contain any count asserting a FLSA claim.

5

It is well-established that summary judgment is appropriately entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court should not weigh the evidence, determine the truth of the matters, or evaluate credibility. *See Montone v. City of Jersey City, et al.*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court should only determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144, 147 (3d Cir. 2007).

### IV. Discussion

Defendant argues that the class action waiver is enforceable and that Plaintiff should not be permitted to proceed as the representative plaintiff in this class action lawsuit on behalf of similarly situated workers employed by Defendant in Pennsylvania and Ohio. (Docket No. 45 at 13-16; 54 at 7-11; 70 at Affirmative Defense No. 27). Plaintiff counters that the class action waiver clause is unenforceable under Pennsylvania law and that the Court should permit him to proceed in a representative capacity on behalf of the proposed class. (Docket No. 55 at 13). Accordingly, the Court begins its analysis with the text of the class action waiver set forth in the Agreement, which provides:

> This Agreement is not intended to release any claims, such as FLSA claims, that the employee is not free to release on his own accord. **Employee waives participation, to the extent permitted by law, in any class or collective action, as either a class or collective action representative or participant as to those**

> **claims not released, by signing this Agreement prior to the conditional certification of a class or collective action.** This Agreement does not waive participation in a class or collective action certified prior to the date of the Employee's signature if the Employee meets the requirements for the defined class or collective action.

(Docket No. 55-1 at ¶ 5 (emphasis added)). To reiterate, Plaintiff executed this Agreement after consulting with his counsel and then proceeded to file the instant class action lawsuit against Defendant a mere nine (9) days later, despite the quoted language of the Agreement.[3] (*See* Docket No. 1; 55-1).

## A. Choice of Law

As noted, the parties' Agreement provides that Texas law governs their contract. (Docket No. 55-1 at ¶ 9). In considering the class action waiver contained within the Agreement, the Court must first determine the appropriate state law governing the issue of whether and to what extent the class action waiver is enforceable. "In federal diversity cases, a federal court must apply the conflict-of-law rules of the forum state in which it sits, in this case, Pennsylvania." *Cincinnati Insurance Company v. Jerry Ellis Construction*, 2016 WL 3211991 at *3 (W.D. Pa. Jun. 9, 2016) (citing *Garcia v. Plaza Oldsmobile LTD.*, 421 F.3d 216, 219 (3d Cir. 2005)). "As the Third Circuit has noted, Pennsylvania courts generally honor the intent of the contracting parties and enforce choice-of-law provisions in contracts executed by them if that state bears a reasonable relationship to the contract." *Id.* (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)). Further, "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." *Id.* In order to

---

[3] Plaintiff also submitted the opt-in form in the FLSA collective action in the Western District of Louisiana ten (10) days after signing the agreement, although his opt-in was later withdrawn with the consent of that Court. (*See* Docket No. 30).

7

determine whether the class action waiver conflicts with strong public policy interests, rendering it unconscionable, the Court now considers Pennsylvania and Texas[4] law regarding unconscionability.[5]

**B. Unconscionability Standard under Pennsylvania Law**

Plaintiff asserts that the class action waiver contained within the Agreement is unconscionable and, therefore, unenforceable. (Docket No. 55 at 13). Pursuant to Pennsylvania law, "[u]nconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'" *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (citing *Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42 (1985)). "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." *Harris*, 183 F.3d at 181 (citing *Bishop v. Washington*, 331 Pa. Super. 387 (1984)). To prove unconscionability under Pennsylvania law, Plaintiff must show the contract was substantively and procedurally unconscionable. *Korea Week, Inc. v. Got Capital, LLC,* 2016 WL 3049490, at *6 (E.D. Pa. May 27, 2016) (internal citations omitted). "In determining unconscionability, the Court of Appeals for the Third Circuit directs [that the Court] apply a 'sliding scale approach;' 'where the procedural unconscionability

---

[4] Because Pennsylvania courts generally honor the intent of the contracting parties and enforce choice-of-law provisions in contracts, the Court need not address the unconscionability of the waiver under Ohio law. In any event, as Defendant argues, the waiver is not unconscionable under Ohio law. (*See* Docket No. 45 at 14-16). At oral argument, Plaintiff's counsel suggested that the Ohio constitution was amended to prohibit such clauses to which the Court directed counsel to provide such authority in the supplemental briefing. (Docket No. 46). However, Plaintiff has failed to support this argument and does not even address it in the many subsequently filed briefs related to this matter. (Docket Nos. 55, 65, 79).

[5] The Court notes that "unconscionability is a question of law for the court" to decide. *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F. Supp. 807, 810 (E.D. Pa. 1981).

is very high, a lesser degree of substantive unconscionability may be required.'" *Id.* (quoting *Quilloin v. Tenet Health System Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012)).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris,* 183 F.3d at 181 (citing E. ALLAN FARNSWORTH, CONTRACTS § 4.28 (2d ed.1990)). "Under Pennsylvania law, a contract is considered procedurally unconscionable if it is a contract of adhesion; one that is a 'standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms.'" *Korea Week,* 2016 WL 3049490 at *7 (internal citations omitted). "Factors to be considered in determining procedural unconscionability include: the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party." *Id.* (internal quotations and citations omitted).

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris,* 183 F.3d at 181 (citing *Germantown*, 491 A.2d at 145-47). "Thus, '[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" *Harris,* 183 F.3d at 181 (quoting *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994)).

**C. Unconscionability Standard Under Texas Law**

Given that the Agreement contains a choice of law provision applying Texas law, the Court briefly summarizes Texas' law of unconscionability which is substantially similar to Pennsylvania law.

A citizen's freedom of contract is a paramount public policy of Texas. *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1204 (C.D. Cal. 2006) (citing *Wood Motor Co. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185-86 (1952)). Under Texas law, a court is not permitted to interfere with the parties' contract just because the court believes the contract is unwise and unfair, or because one of the parties to the contract now wishes a provision did not exist. *Id.* The Texas Supreme Court gave Texas courts clear direction on how to approach legal challenges to contracts in *Wood Motor Co. v. Nebel*:

> if there is one thing which more than another public policy requires is that men of full age and competent understanding shall have the utmost liberty of contracting, and their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice. Therefore you have this paramount public policy to consider – that *you are not lightly to interfere with this freedom of contract*.

238 S.W.2d at 185-86 (emphasis in original). An individual's freedom of contract, however, is not limitless under Texas law. If the complaining party can show that the contract is unconscionable, a Texas court will not enforce it. *Provencher,* 409 F. Supp. 2d at 1204. But, this showing is a difficult one for the complaining party to make. *Id*. (citing *AutoNation U.S.A. Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App. 2003)). To be unenforceable under Texas law, the contract must be both procedurally and substantively unconscionable. *Provencher,* 409 F. Supp. 2d at 1204 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). A contract is procedurally unconscionable if a party has "no real choice" but to enter into the contract. *Provencher,* 409 F. Supp. 2d at 1204 (citing *Dillee v. Sisters of Charity*, 912 S.W.2d 307, 309

(Tex. App. 1995)). "A contract is substantively unconscionable if it is so one-sided that 'no man in his senses and not under a delusion would enter into [it] and which no honest and fair person would accept.'" *Provencher,* 409 F. Supp. 2d at 1204 (quoting *Blount v. Westinghouse Credit Corp.,* 432 S.W.2d 549, 554 (Tex. Civ. App. 1968)).

**D. The Class Action Waiver is Enforceable Under Pennsylvania and Texas Law**

In light of the above authority, and because there are no genuine disputes of material fact between the parties as to the interpretation of the class action waiver, and the factual circumstances related thereto, the Court finds as a matter of law that the class action waiver is enforceable under both Pennsylvania and Texas law.[6] Accordingly, summary judgment will be entered in Defendant's favor and against Plaintiff on this issue. The Court's analysis of the enforceability of the class action waiver follows.

Review of the circumstances surrounding execution of the Agreement illustrates that the Agreement was not a contract of adhesion, and Plaintiff did not lack any meaningful choice in entering into the Agreement. Therefore, the Agreement is not procedurally unconscionable. First, Plaintiff was not required to enter into the Agreement at the beginning of his employment; instead, Plaintiff was provided with the Agreement on or about September 25, 2015, his last day of employment. (Docket No. 55-1 at 11). As such, Plaintiff was not presented with a take-it-or-leave it contract at the beginning of his relationship with Defendant, as were plaintiffs in *Thibodeau,* discussed *infra*. Second, the Agreement contains a revocation provision, which permitted Plaintiff to revoke the Agreement for a period of seven (7) calendar days following the

---

[6] Despite the Court's Order of April 26, 2016 that the parties submit supplemental briefing on the Agreement under Texas law, (Docket No. 71), Plaintiff failed to address class action waivers under Texas law. The supplemental briefing provided by Defendant, (Docket No. 80), as well as the Court's independent research, indicates that the class action waiver is not unconscionable and is enforceable under Texas law.

11

execution of the Agreement. (Docket No. 55-1 at ¶ 4). The Agreement was not to become effective until the revocation period had expired. *Id.* Third, the Agreement contains a notice advising that Plaintiff had forty-five (45) days to consider the Agreement and to consult with an attorney prior to execution of the Agreement. (Docket No. 55-1 at 8). All three of these factors persuade the Court that the contract was not a contract of adhesion because Plaintiff did not lack any meaningful choice in entering into the Agreement. Under its terms there is no "oppression" of or "unfair surprise" to Plaintiff. Plaintiff was given ample time to review the Agreement, familiarize himself with its terms, and was even encouraged in writing to consult with an attorney before signing and returning the Agreement. The Court notes that Plaintiff did in fact consult with counsel after receipt of and prior to execution of the Agreement.[7] (Docket No. 25 at 7).

With regards to substantive unconscionability, this Court finds no evidence that the terms of the Agreement were unreasonably or grossly favorable to Defendant. In return for entering into the Agreement containing the class action waiver, Plaintiff was to receive: a lump sum payment; three (3) months of COBRA payments; and outplacement counseling, compensation and benefits to which Plaintiff was not previously entitled. (Docket No. 55-1 at ¶ 2). As the Court declines to opine on the validity of Plaintiff's waiver of his state law claims at this time, Plaintiff does not lose any statutory right to pursue his damages under the FLSA, the PMWA, or the Ohio Acts by virtue of the class action waiver. These statutes provide for attorneys' fees to the prevailing party in related litigation and therefore, the costs of proceeding individually will not effectively deny redress. Additionally, the First Amended Complaint asserts that Plaintiff's

---

[7] "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone,* 525 Pa. 392 (1990).

individual damages exceed $75,000.00, which is a far-cry from the small amount at issue for each individual plaintiff in *Thibodeau*. (Docket No. 59 at ¶ 3). In sum, the Agreement is not substantively unconscionable.

Plaintiff's main argument in opposition to the class action waiver is that "Pennsylvania's Supreme Court has consistently held that class action waivers are unenforceable under circumstances like this one." (Docket No. 65 at 1) (citing *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 884 (Pa. Super. 2006)). Plaintiff contends that where "the cost of lawyers, fees, and expert witnesses makes [an] individual lawsuit … completely impractical[,]" a class action waiver will not be enforced. *Id.* Defendant counters that *Thibodeau* does not undermine the provision in the present Agreement. (Docket No. 54 at 7-9). This Court agrees.

Plaintiff's reliance on the non-binding decision in *Thibodeau* is unpersuasive as the facts underlying that decision are readily distinguishable from the instant case. *See Thibodeau,* 912 A.2d 874. Additionally, as is more fully discussed below, a more recent decision, *Korea Week Inc. v. Got Capital, LLC*, upheld a class action waiver in a contract between the parties that did not include a corresponding arbitration provision, akin to the Agreement here. 2016 WL 3049490 (E.D. Pa. May 27, 2016). The Court turns first to its analysis of *Thibodeau.*

In *Thibodeau*, plaintiff and other cable subscribers were mailed a customer agreement containing terms unilaterally imposed by Comcast following its buyout of their previous cable provider. *Thibodeau,* 912 A.2d at 876. The agreement mandated individual arbitration and precluded class actions by aggrieved customers. *Id.* at 876-77. Thibodeau filed suit on behalf of a putative class of Comcast customers, averring they had been improperly billed. *Id.* at 877. The court found that the subject agreements were contracts of adhesion, as customers had no opportunity to negotiate or assent to the mandated individual arbitration and preclusion of class

13

action litigation provisions, and customers were forced to accept every word of the agreement or be without cable television. *Id.* at 885. As the allegedly unlawful charge was only $9.60 per month, Thibodeau and his class members were claiming minimal damages. *Id.* The court in *Thibodeau* found that such claims would never be arbitrated on an individual basis, as no individual would expend the time, fees, costs and other expenses necessary for individual litigation or individual arbitration. *Id.* at 885-86. Thus, *Thibodeau* appears to stand for the proposition that "if the costs associated with arbitrating a single claim effectively deny consumer redress, prohibiting class action litigation or class action arbitration is unconscionable." *Id.* at 883.

As Defendant cites in its submissions, courts have refused to follow *Thibodeau* in relation to employment agreements that include both an arbitration provision and a class action waiver. (Docket No. 54 at 7). In *Brown v. Trueblue, Inc.*, the U.S. District Court for the Middle District of Pennsylvania upheld employment agreements including arbitration and waiver of jury clauses, as well as provisions requiring pursuit of any relief individually, rather than on a class basis. *Brown v. Trueblue, Inc.*, 2012 WL 1268644 (M.D. Pa. Apr. 16, 2012). In doing so, the court noted that it had relied on *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) in granting defendants' motion to compel arbitration, which held that state rules requiring the availability of classwide arbitration were preempted by the Federal Arbitration Act. *Id.* at *7. The court also found that *Thibodeau* was no longer good law. *Id.*

Plaintiff concedes that no court considering the Pennsylvania Superior Court's ruling in *Thibodeau* has held that class action waivers <u>outside of the arbitration context</u> are *per se* unenforceable, yet maintains that his class action waiver is unconscionable under Pennsylvania law. (Docket No. 65 at 8). Plaintiff cites to a decision of the Sixth Circuit Court of Appeals,

14

*Killion v. KeHE Distributors, LLC*. *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), *cert denied*, 135 S.Ct. 1745 (2015). In *Killion*, the Sixth Circuit Court of Appeals found that a class action waiver in the absence of an arbitration provision was unenforceable because, without an arbitration clause, the waiver offered no countervailing federal policy to outweigh the FLSA's policy allowing employees to bring actions to recover unpaid overtime pay on behalf of themselves and other employees similarly situated. *Id.* Applying that logic here, Plaintiff suggests that the absence of countervailing federal policy renders the class action waiver unconscionable. (Docket No. 65 at 8, 9).

This Court is not persuaded by the reasoning of the Sixth Circuit Court of Appeals in *Killion*. Instead, the Court looks to *Korea Week*, where the U.S. District Court for the Eastern District of Pennsylvania found class action waivers outside of an arbitration agreement to be enforceable, thereby rendering plaintiffs inadequate class representatives. 2016 WL 3049490 (E.D. Pa. May 27, 2016). There, the plaintiffs had entered into merchant cash advance financing arrangements with defendants which allegedly violated the Racketeer Influenced Corrupt Organizations Act ("RICO"). *Id.* at *1. Plaintiffs brought suit on behalf of a putative class of small businesses that had obtained similar financing arrangements. *Id.* at *2. Each of the plaintiffs' arrangements with defendants included a class action waiver. *Id.* at *2-4. In ruling that these waivers prohibited plaintiffs from serving as adequate class representatives, the court rejected plaintiffs' arguments that class action waivers outside of an arbitration clause are substantively unconscionable. *Id.* at *8-10. The court found the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304 (2013) supported its conclusion that class action waivers outside of arbitration are enforceable. *Id.* at *9. In reaching this decision, the court found that the class action waivers were enforceable, as they were not

15

unconscionable under the applicable state law, nor was there evidence of "legislative intent or policy reasons weighing against enforcement" of the waivers. *Id.* at *10. The *Korea Week* plaintiffs' motion for class certification was denied. *Id.* at 11.

As the court in *Korea Week* was unable to find any legislative intent in RICO weighing against the enforcement of the class action waiver, this Court is unable to locate any "legislative intent or policy reasons weighing against enforcement" of the class action waiver as to the wage and hour claims brought pursuant to the PMWA and the Ohio Acts. Plaintiff maintains that "Pennsylvania state law governs the enforceability of contracts related to rights created under Pennsylvania state law," (Docket No. 65 at 5), but cites to no statutory provisions or case law prohibiting class action waivers in the context of the PMWA and Ohio Acts' claims. As this Court finds the class action waiver is not unconscionable under Pennsylvania law, and there is no evidence of legislative intent under the PMWA or the Ohio Acts to prohibit the class action waiver, this Court will follow the ruling in *Korea Week* and enforce the class action waiver.

Any argument by Plaintiff that the class action waiver contained within the Agreement is unenforceable under Texas law fails as well. Texas courts have expressly held that class action waivers are permissible and are not *per se* unconscionable. *See AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190 (Tex. App. 2003) (finding that class actions are procedural devices, and "may 'not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" (citation omitted)). Federal courts in Texas also have held that class action waivers may be enforceable under both Texas and federal law. *See, e.g., Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294 (5th Cir. 2004) (rejecting appellants' claim that their inability to proceed collectively deprived them of substantive rights available under the FLSA); *In re Online Travel Co. (OTC) Hotel*, 953 F. Supp. 2d 713, 721-22 (N.D. Tex. 2013) (antitrust

16

case finding class arbitration waiver was enforceable, even if high fees for expert witnesses would make individual arbitration economically irrational). Consequently, this Court holds that the class action waiver is not unconscionable under Texas law for the same reasons that the waiver is not unconscionable under Pennsylvania law.

V. **Conclusion**

Plaintiff seeks to be appointed as a class representative even though he agreed to waive "participation, to the extent permitted by law, in any class or collective action, as either a class or collective action representative or participant as to those claims not released, by signing this Agreement prior to the conditional certification of a class or collective action." (Docket No. 55-1 at ¶ 5). Despite consulting with counsel regarding potential state law claims following the receipt of the Agreement, and prior to its execution, Plaintiff now seeks to void the class action waiver as unconscionable. As set forth above, Plaintiff has not shown procedural nor substantive unconscionability of the waiver provision under Pennsylvania or Texas law. Hence, summary judgment is entered against Plaintiff as to any class action claims he has asserted. The case may proceed in this Court as to Plaintiff's individual claims upon his filing of a Second Amended Complaint. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: July 14, 2016

cc/ecf: All counsel of record.